UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| **CHRISTIAN ACTION NETWORK,** | ) | |
| | ) | |
| **PLAINTIFF** | ) | |
| | ) | |
| v. | ) | Civil No. 09-491-B-H |
| | ) | |
| **STATE OF MAINE,** et al., | ) | |
| | ) | |
| **DEFENDANTS** | ) | |

**MEMORANDUM DECISION AND ORDER ON
DEFENDANTS' MOTION TO DISMISS**

Christian Action Network, a Virginia nonprofit tax-exempt organization that wants to raise money in Maine, challenges the Maine Charitable Solicitations Act (the "Act") on First Amendment grounds and asks me to enjoin its enforcement. Christian Action Network argues that Maine's requirement of a state-issued license as a prerequisite to charitable solicitation is an unconstitutional prior restraint of speech; that the Act's prohibition on the unauthorized use of names in solicitations is unconstitutionally overbroad; and that Maine officials engaged in viewpoint discrimination in denying a license and seeking penalties after Christian Action Network distributed a mailing that the officials said contained an "inflammatory anti-Muslim message." I conclude that the Maine Department of Professional and Financial Regulation already had started formal enforcement proceedings against Christian Action Network for violating the Act before Christian Action Network filed this lawsuit. Because those state proceedings offer ample opportunity for Christian Action

Network to present constitutional challenges, a line of cases starting with Younger v. Harris, 401 U.S. 37 (1971), requires that I **ABSTAIN**. The defendants' Motion to Dismiss therefore is **GRANTED**, and the plaintiff's motion for preliminary injunction is **MOOT**.

### FACTUAL AND LEGAL BACKGROUND

Maine's Charitable Solicitations Act, 9 M.R.S.A. §§ 5001-5018 (2009), requires a charity to obtain a license from the Department of Professional and Financial Regulation (the "State") before seeking donations in Maine. See 9 M.R.S.A. § 5004. As part of its licensing regime, the Act imposes recordkeeping, financial disclosure, and informational requirements. See 9 M.R.S.A. §§ 5004, 5005-A and –B, 5008, 5009, 5011-A, 5012.[1] It also provides that "[n]o person shall, for the purpose of soliciting contributions from persons in this State, use the name of any other person, without the specific written consent of the other person." 9 M.R.S.A. § 5013(1).

According to the Complaint, Christian Action Network, a Virginia charity that previously had held a charitable solicitation license in Maine, submitted an application on March 31, 2009 to renew its license for the period November 2008 to October 2009. Pl.'s Verified Compl. for Prelim. Inj. ¶¶ 6, 10, 20 (Docket Item 1). On April 6, 2009, the State informed Christian Action Network that its financial disclosures were incomplete, and on April 21, 2009, Christian Action Network provided the State with the missing information. Id. ¶¶ 22-23.

---

[1] According to Christian Action Network, many other states require disclosure, recordkeeping, and informational requirements, but do not add the precondition of obtaining a license, depending instead on after-the-fact enforcement to ensure compliance. See Resp. in Opp'n to Defs.' Mot. to Dismiss and Reply in Support of Mot. for Prelim. Inj. at 5-6 (Docket Item 21).

Also in April 2009, Christian Action Network sent a fundraising newsletter to Maine residents.  Id. ¶ 24. It mailed the newsletter in an envelope with Governor John Baldacci's name printed on the envelope face, id. ¶ 25, as part of the following block:  "Maine Resident, RE: Illegal Activity . . . OFFICIAL CORRESPONDENCE, Gov. John Baldacci," Envelope (Ex. 1 to Mullen Aff., Ex. 1 to Mot. to Dismiss (Docket Item 11)) (Docket Item 11-1).[2]  Christian Action Network did not seek or receive the Governor's permission to use his name in this manner.  Compl. ¶ 26.  According to the Complaint, the newsletter discussed "the remarkable privileges afforded the religion of Islam in American public schools and universities" and asked for donations.  Id. ¶ 24.[3]

---

[2] Because abstention is involved, I do not consider myself limited to the facts that the plaintiff pleaded to determine whether comity and federalism counsel against my exercise of jurisdiction, and I do not rely upon the pleading or burden requirements of either Rule 12(b)(1) or Rule 12(b)(6). (The State couched its motion as pursuant to Rules 12(b)(1) and 12(b)(6). But Rule 12(b)(1) deals with jurisdictional attacks, whereas abstention is a prudential rather than a jurisdictional ground for dismissal.  See Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc., 477 U.S. 619, 626 (1986) ("[Younger abstention] does not arise from lack of jurisdiction in the District Court, but from strong policies counseling against the exercise of such jurisdiction where particular kinds of state proceedings have already been commenced.").  Rule 12(b)(6) does not seem apt because the request for abstention is more in the nature of a defense and depends on assertions not ordinarily included in a complaint.)  The parties have not cited and I have not found any First Circuit case stating clearly any pleading or burden requirements in this context, but fortunately the parties do not dispute the existence and content of the pertinent documents (although they do dispute their significance), and therefore the question is academic.

[3] The letter contained in Christian Action Network's mailing to Maine residents begins:
> First, let me apologize if my envelope alarmed you in any way.  But I really do need to get your attention about . . . OUTRAGEOUS ILLEGAL ACTIVITY going on in our public schools!!  Please forgive me if I startled or made you angry, but this letter is SO IMPORTANT for you to read.  Dear friend, At the end of this letter, I hope you read my enclosed SPECIAL REPORT.  It contains just a small sample of [ ] CRIMES being committed against our school children in the name of Islam. These are UNCONSTITUTIONAL CRIMES being forced upon our small children who cannot protect themselves unless you and I intervene.  Let me get straight to the point.  There are public schools across the country . . . [ ] elementary and secondary schools, colleges and universities [ ] which are implementing criminal and unconstitutional acts upon our children.  THEY ARE TEACHING (AND SOMETIMES FORCING) THEM TO:  PRAY TO ALLAH.  DRESS UP AS MUSLIMS.  LEARN THE FIVE PILLARS OF ISLAMIC FAITH.  CHANT "PRAISE BE TO ALLAH."  AND RECITE MUSLIM PRAYERS, AMONG OTHER ISLAMIC

*(continued next page)*

On May 6, 2009, the State notified Christian Action Network that its license had been preliminarily denied. Id. ¶ 28. The State referred to Christian Action Network's alleged unlicensed solicitation of donations in Maine in April 2009 and its unauthorized use of the Governor's name in a manner that suggested the Governor's endorsement of the newsletter's "inflammatory anti-Muslim message." Notice of Prelim. Denial at 1-2 (Ex. 2 to Compl.) (Docket Item 1-2). The notice quoted the Act's prohibitions of the unauthorized use of names in solicitations, 9 M.R.S.A. § 5013(1), and of unlicensed soliciting, 9 M.R.S.A. § 5004(1)(C), as well as the State's authority to deny the renewal of a license for any of the reasons listed in 10 M.R.S.A. § 8003(5-A). Id. at 2. The State proposed a consent agreement to resolve Christian Action Network's alleged violations of the Act and offered the opportunity in the alternative to appeal the preliminary denial at a public adjudicatory hearing, to be held pursuant to the Maine Administrative Procedure Act. Id. at 2-3.[4] Christian Action Network did not accept the consent agreement, but appealed the preliminary denial of its license. Compl. ¶ 31.

The State scheduled a hearing on Christian Action Network's appeal for August 20, 2009, but, at Christian Action Network's request, delayed it.

---

BRAINWASHING PROGRAMS. Some schools not only invite Muslim "preachers" to indoctrinate children into Islam, but are requiring or demanding that: *Boys and girls be separated according* to *Muslim tradition. Foot-baths be installed for Muslims students. "Meditation" rooms be established for Muslims prayers. All cafeteria food that offends Muslims be eliminated.* None of these "accommodations" are being set-up for Christian or Jewish students.

Letter at 1 (Ex. 1 to Mullen Aff., Ex. 1 to Mot. to Dismiss) (Docket Item 11-1) (Emphasis in original).

[4] The consent agreement proposed that if Christian Action Network admitted the alleged facts and violations of 9 M.R.S.A. §§ 5013(1) and 5004(1)(C) and paid a fine, the State would issue Christian Action Network's license upon receipt of the payment and would not institute further proceedings against the charity. Consent Agreement (Ex. 3 to Compl.) (Docket Item 1-3).

4

Thibodeau Aff. ¶ 25 (Ex. 2 to Mot. to Dismiss) (Docket Item 11-2). On August 28, 2009, the State provided notice of a rescheduled hearing. Id. ¶ 26. The Amended Notice of Hearing stated that the newly scheduled hearing on October 14, 2009, would consider not only the preliminary denial of Christian Action Network's license, but also "whether to impose disciplinary action" based on the violations already asserted in the first notice, and on two newly-alleged violations: soliciting after expiration of a license and fraud, 10 M.R.S.A. § 8003(5-A)(A)(1) and (7). Am. Notice of Hr'g at 1 (Ex. 12 to Thibodeau Aff.) (Docket Item 11-14).[5]

On October 1, 2009, Christian Action Network filed this lawsuit under 42 U.S.C. § 1983, seeking to have the Act declared unconstitutional and to enjoin its enforcement. It also filed a motion for preliminary injunction. In response, the State opposed the motion for preliminary injunction and moved to dismiss the case on several grounds, including the Younger abstention doctrine. In a conference with the Magistrate Judge, the parties agreed that no evidentiary hearing was necessary on the preliminary injunction motion. I heard oral argument on both motions on January 7, 2010.

---

[5] Under the section heading "Disciplinary Action," the Amended Notice stated: "In addition to considering whether Christian Action Network should be issued a license as a charitable organization, if the State proves by a preponderance of the evidence, and the presiding officer finds, that you committed any of the violations of law described in paragraphs. one, two, three and/or four above, the presiding officer may recommend that disciplinary action be imposed against Christian Action Network pursuant to 10 MRS. § 8003(5-A) as applicable. In addition, if the presiding officer finds a violation, the presiding officer may recommend that Christian Action Network be assessed actual expenses of investigation and hearing pursuant to 10 M.R.S. § 8003-D. Such expenses include the cost of photocopying material to be used at hearing, the cost of retaining expert witnesses, the cost of the hearing officer services, and the costs of transcribing the hearing and photocopying the administrative record in the event of appeal." Am. Notice of Hr'g at 2.

**ANALYSIS**

Under Younger v. Harris and its progeny, a federal court is to abstain from hearing a case "if (1) there is an ongoing state judicial proceeding involving the federal plaintiff that (2) implicates important state interests and (3) provides an adequate opportunity for the federal plaintiff to assert his federal claims." Colonial Life & Accident Ins. Co. v. Medley, 572 F.3d 22, 26 (1st Cir. 2009) (quoting Local Union No. 12004, USW v. Massachusetts, 377 F.3d 64, 77 (1st Cir. 2004)).[6] If those requirements are met, abstention is mandatory in the absence of "extraordinary circumstances." Id. Extraordinary circumstances include bad faith, harassment and extreme bias; great and immediate irreparable harm to core constitutional values, Esso Std. Oil Co. v. Lopez-Freytes, 522 F.3d 136, 143 (1st Cir. 2008) (citing Middlesex, 457 U.S. at 435, and Maymo-Melendez v. Alvarez-Ramirez, 364 F.3d 27, 37 (1st Cir. 2004)); and a statute that is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it," Younger, 401 U.S. at 53-54 (quoting Watson v. Buck, 313 U.S. 387, 402 (1941)).

Here, the State's scheduling of an October hearing on disciplinary action against Christian Action Network in its August 28, 2009, Amended Notice easily satisfies most of the prerequisites for Younger abstention. First, the scheduled hearing would have been a formal and trial-like adjudicatory

---

[6] The Younger abstention doctrine originally applied only to state criminal proceedings, but now applies to certain state civil and administrative proceedings. See Guillemard-Ginorio v. Contreras-Gomez, 585 F.3d 508, 518 (1st Cir. 2009) (citing Bettencourt v. Bd of Registration in Medicine, 904 F.2d 772, 777 (1st Cir. 1990)); see also Ohio Civil Rights Comm'n, 477 U.S. at 627; Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982).

proceeding in which Christian Action Network could have had legal representation, presented evidence, called witnesses, and presented oral or written testimony. See 5 M.R.S.A. §§ 9056–9057 (2009). Second, the hearing implicated the State's important interest in protecting its citizens against fraud and deceptive business practices. See Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Vill. of Stratton, 536 U.S. 150, 162-63 (2002) ("[A] State may protect its citizens from fraudulent solicitation by requiring a stranger in the community, before permitting him publicly to solicit funds for any purpose, to establish his identity and his authority to act for the cause which he purports to represent." (quoting Cantwell v. Conn., 310 U.S. 296, 306 (1940)); Illinois ex rel. Madigan v. Telemarketing Assocs., 538 U.S. 600, 623 (2003) ("[We] have repeatedly recognized the legitimacy of government efforts to enable donors to make informed choices about their charitable contributions."). Third, the Maine Administrative Procedure Act allows presentation of "arguments on all issues" in adjudicatory hearings, 5 M.R.S.A. § 9056(2), and all final agency actions are subject to judicial review in the Superior Court or the Supreme Judicial Court sitting as the Law Court, 5 M.R.S.A. §§ 11001-11008 (2009). There is no indication in the statute that Maine's administrative procedures preclude consideration of constitutional issues; and even if officials here refused to rule on the constitutionality of the statute that they are charged to administer, judicial review of administrative proceedings—which does permit constitutional review—satisfies Younger's requirement that state proceedings provide an

opportunity to make constitutional arguments. See Middlesex, 457 U.S. at 436[7]; see also Globe Air, Inc. v. Thurston, 438 A.2d 884, 886 (Me. 1981) (noting that judicial review includes reversal or modification of agency action if "[i]n violation of constitutional or statutory provisions" (quoting 5 M.R.S.A. § 11007(4)(C)(1)).

The only close issues here are whether the State proceedings qualify under Younger and its progeny as the proper type of administrative hearing and whether the State had commenced the proceedings before Christian Action Network filed this lawsuit. The First Circuit emphasized recently that Younger does not require abstention if, at the time the federal lawsuit is filed, there are no *ongoing* or *pending* state proceedings. It clarified that an investigation in its preliminary stages that carries only a "threat of enforcement" is not considered a pending or ongoing proceeding. Guillemard-Ginorio, 585 F.3d at 519 (citing Telco Commc'ns, Inc. v. Carbaugh, 885 F.2d 1225, 1229 (4th Cir. 1989)). Formal proceedings clearly are pending, it said, if "an indictment or other formal charge" has been filed. Id. at 519. But it refused to "articulate a bright-line rule as to the precise point at which, in the course of an agency investigation, 'proceedings' can be said to have commenced." Id. at 520. It also held that Younger abstention applies only to proceedings that are "coercive, and in most cases, state-initiated." Id. at 522 (citing Kercado-Melendez v. Aponte-Roque, 829 F.2d 255, 259-61 (1st Cir. 1987)); see also id.

---

[7] The plaintiff has the burden of showing that state proceedings do not provide an adequate opportunity to present constitutional claims, Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 14 (1987), and Christian Action Network has not made any showing that Maine's administrative process excludes constitutional arguments or that Maine courts will not entertain constitutional challenges to agency actions.

at 523 (explaining that if a state law does not require any kind of process before an administrative order becomes final and if an appeal process is available only upon request, then appeal proceedings are remedial rather than coercive, and abstention is inappropriate).

Here, Christian Action Network argues persuasively that its appeal of the preliminary denial of its license on May 26, 2009, did not mark the commencement of the kind of state proceedings that require Younger abstention.  Under Maine's administrative rules, the preliminary denial of Christian Action Network's license would have become a final denial if Christian Action Network had not appealed within thirty days.  See Me. Code R. § 02-041-003(1) (2009); 10 M.R.S.A. § 8003(5-A) (allowing denial or nonrenewal of a license without an adjudicatory hearing).  Christian Action Network, not the State, initiated the appeal proceedings of the preliminary denial.  The State's simultaneous offer of a consent agreement did not mark the commencement of formal enforcement proceedings (even though it alleged two violations thereby suggesting that the State believed it had probable cause for finding violations) because, under Maine law, a consent agreement is an *alternative* to the commencement of formal proceedings.  See 10 M.R.S.A. § 8003(5-A)(C); see also Notice of Prelim. Denial at 2 (describing the consent agreement as a "means of resolving this matter without a full adjudicatory hearing").  Nothing in the Notice of Preliminary Denial demonstrated that the State would, in fact, initiate the formal enforcement proceedings required for the imposition of disciplinary action such as a fine.  See 10 M.R.S.A. § 5-A (requiring a formal adjudicatory hearing subject to judicial review for

"nonconsensual disciplinary action . . . other than denial or nonrenewal of a license"). Given these facts, I conclude that at the time Christian Action Network first appealed the denial of its license in May, the only pending state proceedings were remedial and did not implicate Younger abstention. See Guillemard-Ginorio, 585 F.3d at 522 ("[R]emedial proceedings initiated by the plaintiffs are not of the type to which deference under Younger applies.").

But by the end of August 2009, the situation had changed. On August 28, over a month before this federal lawsuit started on October 1, the State informed Christian Action Network that a formal hearing, newly scheduled for October 14, 2009, would be substantively and procedurally different from a merely remedial appeal hearing. The October hearing would have two purposes: first, to consider the appeal of the denial of licensure; and, second, "whether to impose disciplinary action against Christian Action Network for violating applicable law."[8] Am. Notice of Hr'g at 1. In this Amended Notice, the State informed Christian Action Network that it could be subject to liability for violations other than those listed in the Notice of Preliminary Denial. Specifically, the State alleged that Christian Action Network had sought solicitations after its license had expired and had engaged in fraud, deceit, or misrepresentation, in violation of 10 M.R.S.A. § 8003(5-A)(A)(7) and (A)(1). Id. at 2. This Amended Notice stated that at the October hearing, the State would bear the burden of proving these violations of law and whether the violations were a proper basis for denying the license and for

---

[8] Indeed, the Amended Notice has two underlined subheadings: Appeal of Preliminary Denial; and Disciplinary Action. Am. Notice of Hr'g at 1-2.

recommending the imposition of further disciplinary action. Id. at 1-2. The Amended Notice thus unambiguously demonstrated that the October proceeding was more than a review of the preliminary license denial and that it could result in the imposition of disciplinary action beyond license denial. Id. at 2.[9] Furthermore, the scheduled hearing was coercive in nature. The Amended Notice stated that if Christian Action Network failed to appear, it would be subject to "disposition by default." Id. at 3. In sum, after Christian Action Network initiated the appeals process and declined to accept the consent agreement, the State initiated formal enforcement proceedings in which, rather than simply review the imposition of license denial, it would seek to prove violations and, if successful, impose disciplinary measures. I conclude, therefore, that the State has met its burden of showing that formal enforcement proceedings had started before Christian Action Network filed its federal complaint and that the Younger abstention doctrine applies.[10]

---

[9] The Amended Notice does not state that, upon finding a violation, the presiding officer may recommend *further proceedings*, but states instead that if the presiding officer finds a violation, he or she may recommend that disciplinary action "be imposed." Am. Notice of Hr'g at 1-2. The pending hearing was therefore a "judicial inquiry" designed to "investigate[ ], declare[ ] and enforce[ ] liabilities as they stand on present or past facts and under laws supposed already to exist." Bettencourt, 904 F.2d at 778 (quoting New Orleans Pub. Serv., Inc. v. City of New Orleans, 491 U.S. 350, 372 (1989)).

[10] The scheduled October 2009 hearing would have been an enforcement proceeding for all the reasons that the "informal fact-finding conference" in Telco was not. Guillemard-Ginorio, 585 F.3d at 519 (citing Telco, 885 F.2d at 1227). In Telco, the company requested the informational meeting; the hearing was not held pursuant to the state administrative procedure act and did not provide an opportunity to examine or to cross-examine witnesses; and there would have been neither a record nor an impartial presiding officer. Telco, 885 F.2d at 1228. Here, while Christian Action Network requested an appeal, it did not request a hearing at which it would face disciplinary action beyond the denial of its license, and in fact, no further discipline was pending in May 2009. In scheduling the October hearing, the State proposed to enforce the Act against Christian Action Network and, if successful in proving violations, to impose penalties. Moreover, the October hearing would have been a formal, trial-like proceeding under the Maine Administrative Procedure Act. See 5 M.R.S. §§ 9056, 9059, 9062.

Under the Younger line of cases, the burden then shifts to Christian Action Network to show that "extraordinary circumstances" in this case should lead me not to abstain. Colonial Life & Accident, 572 F.3d at 26 (citing Younger, 401 U.S. at 43-47, and New Orleans Pub. Serv., 491 U.S. at 366-68). Such extraordinary circumstances include (1) prosecutorial bad faith, harassment, and bias, Perez v. Ledesma, 401 U.S. 82, 85 (1971) ("Only in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown is federal injunctive relief against pending state prosecutions appropriate"); (2) great and immediate irreparable harm to constitutional rights, Esso Std. Oil Co., 522 F.3d at 143; and (3) flagrant unconstitutionality, Colonial Life & Accident, 572 F.3d at 26-27.

Christian Action Network's lawyer suggested at oral argument that the State "threw the book" at Christian Action Network in reaction to what the State had characterized as its "inflammatory anti-Muslim" message, and that the decision to seek disciplinary action on this basis shows the State's bad faith (and presumably harassment and bias). But the standard of bad faith is measured by whether there is "any realistic expectation of finding a violation of a rule." Brooks v. New Hampshire Supreme Court, 80 F.3d 633, 641 (1st Cir. 1996). The bias standard encompasses "cases in which extreme bias completely renders a state adjudicator incompetent and inflicts irreparable harm upon the petitioner." Esso Std. Oil Co., 522 F.3d at 143 (citing Gibson v. Berryhill, 411 U.S. 564, 577 (1973)). Christian Action Network has not come

12

close to satisfying its burden to show that the State's disciplinary action here cannot succeed, given Christian Action Network's use of the Governor's name without his permission, nor has it shown extreme bias or incompetence. It thus has failed to meet the bad faith, harassment, and bias exception to Younger.

Christian Action Network contends also that it will suffer "great and immediate irreparable harm to fundamental constitutional rights." Resp. at 2. But it is well-settled that a First Amendment *facial* challenge to a statute, like that mounted here, does not preclude Younger abstention. See Younger, 401 U.S. at 53 (holding that a federal court should not enjoin enforcement of a statute "solely" because "on its face" it abridges First Amendment rights); see also Brooks, 80 F.3d at 641 (same).

Finally, Christian Action Network argues that I should not abstain because both the Maine Act's licensing requirements and its prohibition on the unauthorized use of names in solicitations, 9 M.R.S.A. § 5013(1), are facially unconstitutional in all their applications. Resp. at 13-14, 16-22. The Younger Court recognized that abstention would not be appropriate if a statute were "flagrantly and patently" unconstitutional "in whatever manner and against whomever an effort might be made to apply it." Younger, 401 U.S. at 53-54 (quoting Buck, 313 U.S. at 402). But that is not the case here. The unauthorized name restriction certainly would be constitutional if applied only to the *deceptive* use of names in solicitations (indeed, 9 M.R.S.A. § 5014 treats a violation of the Act as a violation of Maine's Unfair Trade Practices Act). As for the licensing component of the Maine Act, contrary to Christian Action

13

Network's argument, the statutory provision that the State "may deny" a license for certain enumerated statutory reasons, 9 M.R.S.A. § 5017, is not facially unconstitutional.  See Thomas v. Chi. Park Dist., 534 U.S. 316, 325 (2002) (holding that "may deny" is a "permissive" construction that "furthers, rather than constricts, free speech").[11]  At oral argument, Christian Action Network's lawyer also argued, apparently for the first time, that the statute is necessarily unconstitutional because it lacks a time limit for issuing a license after receipt of an application.  But the Act includes a requirement that an application be filed at least thirty days before a charity starts soliciting donations, 9 M.R.S.A. § 5004(1)(A), and the Act might be interpreted such that this thirty-day period limits the time for agency action.  In any case, the lack of a time limit on agency action constitutes, at most, a facial challenge to a section of the Act on vagueness grounds, not a demonstration of the flagrant and patent unconstitutionality of the Act "in every clause, sentence, and paragraph, and in whatever manner and against whomever an effort might be made to apply it."  Brooks, 80 F.3d at 641 (quoting Younger, 401 U.S. at 53-54).  It therefore does not fit within the "very narrow" Younger exception for flagrant and patent unconstitutionality.  Rossi v. Gemma, 489 F.3d 26, 35 n.16 (1st Cir. 2007).[12]

---

[11] To be sure, the use of discretion to discriminate based on viewpoint would be unconstitutional, Thomas, 534 U.S. at 325, but that involves factual inquiry, and "[w]hat requires further factual inquiry can hardly be deemed 'flagrantly' unlawful for purposes of a threshold abstention determination."  New Orleans Pub. Serv., 491 U.S. at 367.

[12] As mentioned in text, Christian Action Network argues that the Maine Act is void for vagueness.  It also argues that the Act violates due process rights.  Because Christian Action Network has not met the flagrant and patent unconstitutionality standard, I abstain under Younger from deciding the merits of either of those issues.

14

I conclude, therefore, that none of the Younger exceptions applies.

## CONCLUSION

I do not decide whether Maine's Charitable Solicitations Act creates an unconstitutional prior restraint on speech, whether the Act's provisions are unconstitutionally overbroad, or whether the State has discriminated against Christian Action Network based on viewpoint. Younger abstention, when it applies, is mandatory. Because the State initiated formal enforcement proceedings against Christian Action Network over a month before this lawsuit started and because Christian Action Network has not shown either that Maine's proceedings prevent the presentation of constitutional arguments or that one of the Younger exceptions applies, I conclude, considering the important state interests involved, that I must **ABSTAIN** from ruling on the merits of this case.

The defendant's Motion to Dismiss is **GRANTED WITHOUT PREJUDICE**. The plaintiff's Motion for Preliminary Injunction is **Moot**.

**SO ORDERED.**

**DATED THIS 13TH DAY OF JANUARY, 2010**

/s/D. Brock Hornby
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**